**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| PHILIPS NORTH AMERICA LLC, | § § § § § § § § § § § § | Civil No: 19-cv-272 |
| Plaintiff, | | |
| v. | | |
| DALE E. DOROW and WILLIAM M. GRISWOLD, | | JURY TRIAL DEMANDED |
| Defendants. | | |

## COMPLAINT

Plaintiff Philips North America LLC ("Philips" or "Plaintiff"), by and through its undersigned counsel, hereby brings the following Complaint against Dale E. Dorow ("Mr. Dorow") and William M. Griswold ("Mr. Griswold") (collectively, "Defendants"), and pleads as follows:

## NATURE OF THE ACTION

1.      Philips develops, sells, supports, maintains, and services medical imaging systems, such as X-ray systems, used at hospitals and medical centers, including the proprietary hardware and software used to operate, service, and repair such systems.

2.      Defendants Mr. Dorow and Mr. Griswold were formerly employed by Philips to service Philips' manufactured medical imaging systems.  In that role, Defendants had access to Philips' internal documents, software, and other information, including confidential and trade secret information.

3. Given the sensitive nature of the information accessible by Defendants during their employment with Philips, Defendants entered into Employee Ethics and Intellectual Property Agreements ("Agreements") with Philips. Copies of the Agreements entered into by Mr. Griswold and Mr. Dorow are attached hereto as **Exhibits A** and **B**, respectively.

4. After the termination of their employment with Philips, Defendants were hired by Transtate Equipment Company, Inc. ("Transtate") to service Philips' manufactured medical imaging systems and repair or refurbish Philips' systems and parts.

5. Defendants continue to be employed by Transtate.

6. Philips recently discovered that Defendants breached their Agreements and violated other intellectual property rights of Philips by retaining materials relating to Philips' business that should have been delivered to Philips upon Defendants' termination, acquiring materials about Philips' business without authorization after their termination, disclosing Philips' confidential and trade secret information to Transtate, and using Philips' confidential and trade secret information to compete against Philips.

7. Philips brings this civil action against Defendants because, as set forth below, Defendants breached their Agreements with Philips, misappropriated Philips' trade secrets, and deceptively and unfairly competed against Philips.

8. Philips additionally seeks a permanent injunction preventing Defendants from further disclosing or using Philips' confidential and trade secret information and an order requiring an accounting of all trade secret information misappropriated by Defendants, including an identification of all persons or entities the trade secret information has been disclosed to or used on behalf of, and return of all trade secret information misappropriated by Defendants.

## Parties

9.    Plaintiff Philips North America LLC is a Delaware LLC, formerly known and doing business as Philips North America Corporation (a Delaware Corporation), with a principal place of business in Andover, Massachusetts.

10.    Philips' business includes, among other things, developing, manufacturing, selling, supporting, maintaining, and servicing Philips' medical imaging systems, including the proprietary hardware and software used to operate, service, and repair such systems.

11.    Defendant Dale E. Dorow resides in Black Mountain, North Carolina.

12.    Defendant William M. Griswold resides in Newton, North Carolina.

## Jurisdiction and Venue

13.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity exists between the parties.

14.    This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) because asserted claims arise under 18 U.S.C. § 1836 (Defend Trade Secrets Act) and 28 U.S.C. § 1369 (supplemental jurisdiction) and the doctrines of ancillary and pendant jurisdiction.

15.    This Court has personal jurisdiction over Defendants because they reside in North Carolina.

16.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants reside in this judicial district and a substantial part of the conduct, events, or omissions giving rise to Philips' claims occurred in this judicial district and/or had and have connections to this judicial district.

## Facts and Allegations

17.     Philips reasserts, re-alleges, and incorporates by reference the allegations in the above-stated paragraphs of this Complaint as if fully set forth herein under Facts and Allegations.

### ~ Background Concerning Philips and Philips' Systems ~

18.     Philips develops, manufactures, sells, and subsequently supports, maintains, and services medical imaging systems, including developing, manufacturing, selling, supporting, maintaining, and servicing the proprietary hardware and software used to operate, service, and repair such systems.  The systems include, but are not limited to, imaging devices such as x-ray machines, CT and PET scanners, MR scanners, and nuclear medicine scanners.

19.     The foregoing systems include, but are not limited to:  a series of x-ray machines known as the "Allura" models; a series of CT and/or PET scanners known as the "Brilliance," "Ingenuity," "Vereos," "IQon," "iCT," "Big Bore," and "MX16" models; a series of MR scanners known as the "Ingenia" models; and a series of nuclear medicine and/or other scanners known as the "BrightView" models.

20.     The systems are complex pieces of medical equipment that rely heavily on accompanying proprietary software developed and owned by Philips and related Philips entities, the specific versions and functionalities of which can vary among systems.

21.     Philips has generated extensive documentation and software for servicing such systems.  Philips utilizes software and hardware access controls and contractual obligations to restrict access to documentation and software for servicing Philips' systems.

22.     Philips makes service documentation and tools sufficient to allow performance of assembly, installation, adjustment, and testing ("AIAT") services on Philips' systems to

- 4 -

individuals who register for AIAT access.  Philips requires each individual who registers for AIAT access to use an individual-specific hardware access key, in conjunction with the individual's password, to allow the individual to access software tools on Philips' systems to perform AIAT services.

23.     Philips makes additional service documentation and tools available to customers who enter into contractual agreements with Philips.  The contractual agreements include terms prohibiting Philips' customers from disclosing or providing to others Philips' confidential service documents and tools.  Philips also requires customers' individual biomedical engineers ("biomed") to enter into confidentiality agreements.  Philips further requires each biomed to use a user-specific hardware access key, in conjunction with a user-specific password, to allow the biomed to access software tools on Philips' systems to perform additional service activities beyond AIAT services.

24.     Philips also develops extensive service information and tools that it makes available only to its employees.  Due to the sensitive nature of the information and tools, Philips utilizes both contractual and technological measures to ensure such information and tools are kept secret.

25.     Philips' employees enter into Agreements in which they agree not to use, publish, or otherwise disclose (except as their job requires), either during or after their employment, any secret or confidential (proprietary) information or data of Philips or Philips' customers or any other third party received by Philips in confidence.  As part of their Agreements, Philips' employees also agree to deliver promptly to Philips all written and other materials that relate to the business of Philips or its affiliates promptly upon their termination of employment.

26.     Philips also uses technological measures to keep its information and service tools secret.  For example, Philips makes certain encrypted service documents available to its employees through Philips' InCenter system.  Philips' employees who provide field service may access certain documents in InCenter with their IST account and password.  The specific documents each employee may access and decrypt are dictated by that employee's access credentials.  Philips also provides confidentiality notices on such documents.

27.     By way of further example, Philips makes service tools available to download through its Zeppelin platform.  Philips restricts access to service tools in its Zeppelin platform based on the credentials associated with an individual's IST account.  Thus, a customer who entered into a service contract with confidentiality terms may access certain service tools that are not available to others.  A Philips Field Service Engineer could access additional service tools.  A Philips National Support Specialist would be able to access still further tools that would not be made available to a Philips Field Service Engineer.

~ Background Concerning Defendants ~

28.     Defendants were former National Support Specialists employed by Philips to service interventional X-ray ("IXR") and image-guided therapy ("IGT") systems.  As National Support Specialists, Defendants had extensive access to Philips' internal information and service tools.  This included highly sensitive information that Philips restricts even its own Field Service Engineers from accessing.

29.     Given the sensitive nature of the information accessible by Defendants during their employment with Philips, Defendants entered into Employee Ethics and Intellectual Property Agreements ("Agreements") with Philips.  **Exhibits A** and **B**.

30.     Mr. Griswold voluntarily terminated his employment with Philips in or around September 2013.

31.     Mr. Griswold concealed from Philips that he was going to work for a competitor.

32.     In relation to Mr. Griswold terminating his employment, Mr. Griswold reviewed and signed an Affirmation of Employee Ethics and Intellectual Property Agreement ("Affirmation").  Mr. Griswold's Affirmation is attached as **Exhibit C**.

33.     Mr. Dorow voluntarily terminated his employment with Philips on or around June 2016.

34.     Mr. Dorow concealed from Philips that he was going to work for a competitor.

35.     In relation to Mr. Dorow terminating his employment, Mr. Dorow reviewed and signed an Affirmation.  Mr. Dorow's Affirmation is attached as **Exhibit D**.

36.     By signing their respective Affirmations, each Defendant acknowledged his continuing duties of confidentiality set forth in their Agreement.

37.     By signing their respective Affirmations, each Defendant further acknowledged his agreement not to disclose or use (either directly or indirectly) any secret or confidential information relating to the business of Philips, which was acquired by the employee from any source during his employment at Philips, and that such information includes (but is not limited to) technical or production know-how, trade secrets, and any other non-public information.

38.     Philips further went through an employee off-boarding process in relation to their termination to ensure that Defendants understood their continuing duties of confidentiality to Philips.

39.     In or around July 2015, a Philips Field Service Engineer ("FSE") observed a then-unknown non-Philips technician service a Philips' Allura system at the Lakewood Hospital

- 7 -

Medical Center ("Lakewood") in Lakewood, California.  The FSE introduced himself to the unknown technician, who indicated that he would be doing calibrations and adjustments.  Philips ultimately investigated the services performed at Lakewood and learned that the Allura system had been accessed for calibrations without insertion of a Philips access key.  Philips further analyzed files on the Allura systems and eventually discovered that changes were made to two files to effectively remove access controls that would normally require a service technician to use an authorized Philips access key and associated password to access Philips' proprietary service materials.  The technician or his employer's apparent knowledge of the specific files to modify and the specific modifications to make to those files to gain unauthorized access to Philips' proprietary service materials indicated a high level of knowledge about Philips' proprietary systems.

40.    Philips eventually discovered that Lakewood contracted the services from North America Imaging ("NAI"), and that NAI contracted the specific work observed by Philips to Transtate.

41.    Philips further investigated Transtate's actions and learned that Transtate's conduct was not limited to Lakewood and, instead, was widespread and continuing.  Philips wrote to Transtate requesting that it promptly cease and desist all unauthorized access to and use of Philips' proprietary service materials.  Transtate responded through counsel stating that its investigation revealed no violation of any protectable interest of Philips, but not denying that Transtate's employee gained access to Philips' Allura system without a requisite access key.

42.    In July 2017, Philips and related Philips entities filed a civil action asserting claims against Transtate under the Computer Fraud Abuse Act ("CFAA"), 18 U.S.C. § 1030, Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201, Defend Trade Secrets Act

- 8 -

("DTSA"), 18 U.S.C. § 1836), Georgia Trade Secrets Act, O.C.G.A. § 10-1-760, and Copyright Act, 17 U.S.C. § 101, *et seq.,* among others. That action is pending in the United States District Court for the Northern District of Georgia as civil action 1:17-cv-02864-LMM (the "Transtate Action").

43.     Discovery in the Transtate Action commenced on April 27, 2018. Transtate made its first production of documents in September 2018 and its first production of electronically stored information in December 2018.

44.     Philips first learned from documents produced by Transtate that Defendants had provided information acquired from their former Philips employment to Transtate, including without limitation trade secret information about how to gain unauthorized access to software tools on Philips' Allura systems, confidential and trade secret Philips' documents, and confidential and trade secret internal Philips' stand-alone software tools for servicing Philips' Allura systems.

45.     Philips also learned that Transtate's president instructed all Transtate employees to conceal from others their method of accessing and servicing systems and not to disclose how Transtate services equipment.

46.     Because Defendants misrepresented to Philips during their off-boarding process that they had returned and/or were not taking any Philips' property information, including documents, or tools relating to servicing Philips' systems, Defendants signed Affirmations acknowledging their continuing duties to Philips, and because Transtate deliberately concealed its unauthorized methods of accessing and servicing Philips' systems, Philips could not reasonably have discovered Defendants' actions in breach of their Agreements and Affirmations

with Philips and Defendants' misappropriation of trade secrets prior to discovery in the Transtate Action.

47. By providing Philips' confidential and trade secret information to Transtate, Defendants have enabled Transtate to develop exploit software to circumvent Philips' access controls and provide Transtate's employees with unauthorized access to Philips' proprietary service materials. Defendants further disseminated Philips' confidential and trade secret information throughout Transtate, allowing Transtate as a whole to compete unfairly. Defendants additionally have used and continue to use Philips' confidential and trade secret information and stand-alone service tools they took from Philips to service Philips' systems and repair or refurbish Philips' systems and parts, and to thereby unfairly compete with Philips.

**Count I:**
**Breach of Contract**

48. Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count I.

49. The Agreements and Affirmations between Defendants and Philips are valid and enforceable contracts.

50. As set forth above, Defendants are former Philips employee who are parties to, and subject to the terms of, Agreements with Philips intended to ensure that Defendants did not, and do not, improperly use, disclose, or exploit secret, proprietary or confidential information and data of Philips or Philips customers gained during the course of their employment with Philips.

51. True and correct copies of Defendants' Agreements and Affirmations with Philips are attached hereto as Exhibits A-D, and are fully incorporated into this Complaint as if set forth in full herein.

- 10 -

52.     Defendants intentionally and/or knowingly materially breached the terms of their Agreements and Affirmations with Philips by retaining Philips' confidential and/or proprietary information, including documents, software, and business information, after the termination of their employment with Philips.

53.     Defendants intentionally and/or knowingly materially breached the terms of their Agreements and Affirmations with Philips by providing Philips' confidential and/or proprietary information, including documents, software, and business information, to Transtate.

54.     Defendants intentionally and/or knowingly materially breached the terms of their Agreements and Affirmations with Philips by using Philips' confidential and/or proprietary information to service Philips' systems and repair or refurbish Philips' systems and parts, including using documents and service tools taken from Philips to service Philips' systems and using Transtate's exploit software developed by Transtate based on trade secret information misappropriated from Philips and using, without authorization, Philips' proprietary service materials accessible via Transtate's exploit software.

55.     Defendants intentionally and/or knowingly breached the terms of their Agreements and Affirmations with Philips for purposes of commercial gain for themselves personally.

56.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants violated the terms of the Agreements and Affirmations and, by doing so, have thereby obtained valuable diagnostic and proprietary maintenance log files, and access to other valuable tools and information, to their own personal benefit, and thereby caused damages to Philips that include business losses, unfair competition, and intrusion upon trade secrets, and that further include the threat of continuing and ongoing harms relating to the same.

57.     As a direct and proximate result of Defendants' breach of contract, Philips has suffered actual damages in an amount to be proven at trial, but are in excess of $75,000.00, plus additional costs as appropriate, fees, and interest allowed by contract or law.

**Count II:**
**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836**

58.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count II.

59.     Philips owns and possesses certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business, and economic information, as alleged above, in relation to its servicing of Philips' medical imaging systems.

60.     Philips' confidential, proprietary, and trade secret information relates to medical imaging systems used in, or intended for use in, interstate or foreign commerce.

61.     Philips has engaged in reasonable measures to maintain the secrecy of its confidential, proprietary, and trade secret information relating to its servicing of Philips' medical imaging systems.  Such reasonable measures include hardware and software access controls, including two-factor authentication requiring both an individual-specific access key and password, written notices and warnings, and contractual protections.

62.     Philips has expended significant money and effort in developing, employing, utilizing, and protecting Philips' systems and related service information and tools, and it would be difficult for Philips' competitors to properly acquire or independently create similar service information or tools to compete against Philips.

63.     Philips' confidential, proprietary, and trade secret information derives independent economic value to Philips by not being generally known, and not being readily

ascertainable through proper means, by another person who could obtain economic value from the disclosure or use of the information.

64.     Moreover, Philips' confidential, proprietary, and trade secret information is of significant commercial value to Philips because, among other things, Philips relies upon these trade secrets to achieve an advantage in the marketplace with respect to the quality, range, and efficiency of the repair and maintenance services that it is able to offer and with respect to pricing thereto.

65.     Further, Philips relies on the secrecy of its confidential business information to prevent competitors from unfairly competing against Philips using business and technical information Philips has compiled relating to its customers.

66.     Further still, Philips relies on the secrecy of its service information and service tools for public safety because unauthorized modification or customization of Philips' systems could render the systems ineffective or unable to be reliably used for their intended clinical purposes or could even result in potentially unnecessary radiation exposure to patients and/or clinical users.

67.     Examples of trade secret information misappropriated by Defendants include: information regarding how to locally and remotely access Philips' systems; Philips' internal documentation about software Philips uses for information gathering and multi-user collaboration; Philips' internal plans for production and end of life of its systems; Philips' internal customer information; Philips' internal stand-alone software programs; and passwords. Philips takes reasonable steps to protect such information, through both contractual agreements with its employees and technological measures.   Such trade secret information provides

- 13 -

independent economic value by not being generally known because it allows Philips' to secure its systems and grow its relationships with its customers.

68.    Defendants misappropriated some or all of these trade secrets for their unlawful use and for Transtate's unlawful use without express or implied consent by Philips.

69.    Defendants' misappropriation included, without limitation, Defendants acquiring Philips' trade secret information and stand-alone service tools without authority, Defendants providing Philips' trade secret information to Transtate to enable Transtate to develop exploit software to circumvent Philips' access controls and provide Transtate's employees with unauthorized access to Philips' proprietary service materials, Defendants disseminating Philips' trade secret information throughout Transtate, allowing Transtate as a whole to compete unfairly, and Defendants using and continuing to use Philips' trade secret information and stand-alone service tools to service Philips' systems and repair or refurbish Philips' systems and parts, and to thereby unfairly compete with Philips.

70.    At the time of Defendants' acquisition, disclosure, and use of Philips' trade secret information, Defendants knew or had reason to know that the information they learned and received from Philips was acquired under circumstances giving rise to a duty to maintain the secrecy of the information or limit the use of the information.

71.    Defendants' acquisition, disclosure, and use of Philips' trade secret information was without Philips' express or implied authority or consent.

72.    While Defendants retained without authorization Philips' trade secret information prior to the effective date of the DTSA and disclosed and used without authorization Philips' trade secret information prior to enactment of the DTSA, Defendants have continued to acquire, disclose, and use Philips' trade secret information since the enactment of the DTSA.

73.     Defendants' actions have been knowing, deliberate, willful, and in utter disregard of Philips' rights.

74.     As a result of Defendants' misappropriation of Philips' trade secret information, Philips has suffered actual damages in an amount to be proven at trial.  At a minimum, Defendants' misappropriation has allowed Transtate to gain an improper competitive advantage over Philips that caused or may cause Philips to be underbid or to otherwise lose business that it would have otherwise obtained.

75.     Defendants' ongoing and continuing use of Philips' trade secrets has caused and, unless enjoined, will continue to cause Philips repeated and irreparable injury.  Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by Defendants.  Philips is entitled to an order requiring an accounting of all trade secret information misappropriated by Defendants, including an identification of all persons or entities the trade secret information has been disclosed to or use on behalf of, and return of all trade secret information misappropriated by Defendants.

76.     Philips has been damaged by all of the foregoing and is entitled to an award of exemplary damages and fees.

**Count III:**
**Violation of the North Carolina Trade Secrets Protection Act, N.C.G.S. § 66-152**

77.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count III.

78.     Philips owns and possesses certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business, and economic information, as alleged above, in relation to its servicing of Philips' medical imaging systems.

- 15 -

79.     Philips has engaged in reasonable measures to maintain the secrecy of its confidential, proprietary, and trade secret information relating to its servicing of Philips' medical imaging systems.  Such reasonable measures include hardware and software access controls, including two-factor authentication requiring both an individual-specific access key and password, written notices and warnings, and contractual protections.

80.     Philips has expended significant money and effort in developing, employing, utilizing, and protecting Philips' systems and related service information and tools, and it would be difficult for Philips' competitors to properly acquire or independently create similar service information or tools to compete against Philips.

81.     Philips' confidential, proprietary, and trade secret information derives independent economic value to Philips by not being generally known, and not being readily ascertainable through proper means, by another person who could obtain economic value from the disclosure or use of the information.

82.     Moreover, Philips' confidential, proprietary, and trade secret information is of significant commercial value to Philips because, among other things, Philips relies upon these trade secrets to achieve an advantage in the marketplace with respect to the quality, range, and efficiency of the repair and maintenance services that it is able to offer and with respect to pricing thereto.

83.     Further, Philips relies on the secrecy of its confidential business information to prevent competitors from unfairly competing against Philips using business and technical information Philips has compiled relating to its customers.

84.     Further still, Philips relies on the secrecy of its service information and service tools for public safety because unauthorized modification or customization of Philips' systems

could render the systems ineffective or unable to be reliably used for their intended clinical purposes or could even result in potentially unnecessary radiation exposure to patients and/or clinical users.

85. Examples of trade secret information misappropriated by Defendants include: information regarding how to locally and remotely access Philips' systems; Philips' internal documentation about software Philips uses for information gathering and multi-user collaboration; Philips' internal plans for production and end of life of its systems; Philips' internal customer information; Philips' internal stand-alone software programs; and passwords. Philips takes reasonable steps to protect such information, through both contractual agreements with its employees and technological measures. Such trade secret information provides independent economic value by not being generally known because it allows Philips' to secure its systems and grow its relationships with its customers.

86. Defendants misappropriated some or all of these trade secrets for their unlawful use and for Transtate's unlawful use without express or implied consent by Philips.

87. Defendants' misappropriation included, without limitation, Defendants acquiring Philips' trade secret information and stand-alone service tools without authority, Defendants providing Philips' trade secret information to Transtate to enable Transtate to develop exploit software to circumvent Philips' access controls and provide Transtate's employees with unauthorized access to Philips' proprietary service materials, Defendants disseminating Philips' trade secret information throughout Transtate, allowing Transtate as a whole to compete unfairly, and Defendants using and continuing to use Philips' trade secret information and stand-alone service tools to service Philips' systems and repair or refurbish Philips' systems and parts, and to thereby unfairly compete with Philips.

88.     At the time of Defendants' disclosure and use of Philips' trade secret information, Defendants knew or had reason to know that the information they learned and received from Philips was acquired under circumstances giving rise to a duty to maintain the secrecy of the information or limit the use of the information.

89.     Defendants continue to acquire, disclose, and use Philips' trade secret information.

90.     Defendants' acquisition, disclosure, and use of Philips' trade secret information was without Philips' express or implied authority or consent.

91.     Defendants' actions have been knowing, deliberate, willful, and in utter disregard of Philips' rights.

92.     As a result of Defendants' misappropriation of Philips' trade secret information, Philips has suffered actual damages in an amount to be proven at trial.   At a minimum, Defendants' misappropriation has allowed Transtate to gain an improper competitive advantage over Philips that caused or may cause Philips to be underbid or to otherwise lose business that it would have otherwise obtained.

93.     Defendants' ongoing and continuing use of Philips' trade secrets has caused and, unless enjoined, will continue to cause Philips repeated and irreparable injury.  Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by Defendants.  Philips is entitled to an order requiring an accounting of all trade secret information misappropriated by Defendants, including an identification of all persons or entities the trade secret information has been disclosed to or use on behalf of, and return of all trade secret information misappropriated by Defendants.

94.     Philips has been damaged by all of the foregoing and is entitled to an award of exemplary damages and fees because Defendants' misappropriation has been willful and malicious.

**Count IV:**
**Unfair and Deceptive Practices in Violation of N.C.G.S. § 75-1.1**

95.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count IV.

96.     Philips owns and possess certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business, and economic information, as alleged above, in relation to its servicing of Philips' medical imaging systems.

97.     Philips has engaged in reasonable measures to maintain the secrecy of its confidential, proprietary, and trade secret information relating to its servicing of Philips' medical imaging systems.  Such reasonable measures include hardware and software access controls, written notices and warnings, and contractual protections.

98.     Examples of trade secret information misappropriated by Defendants include: information regarding how to locally and remotely access Philips' systems; Philips' internal documentation about software Philips uses for information gathering and multi-user collaboration; Philips' internal plans for production and end of life of its systems; Philips' internal customer information; Philips' internal stand-alone software programs; and passwords. Philips takes reasonable steps to protect such information, through both contractual agreements with its employees and technological measures.  Such trade secret information provides independent economic value by not being generally known because it allows Philips' to secure its systems and grow its relationships with its customers.

- 19 -

99. Defendants misappropriated some or all of these trade secrets for their unlawful use and for Transtate's unlawful use without express or implied consent by Philips.

100. Defendants' misappropriation included, without limitation, Defendants acquiring Philips' trade secret information and stand-alone service tools without authority, Defendants providing Philips' trade secret information to Transtate to enable Transtate to develop exploit software to circumvent Philips' access controls and provide Transtate's employees with unauthorized access to Philips' proprietary service materials, Defendants disseminating Philips' trade secret information throughout Transtate, allowing Transtate as a whole to compete unfairly, and Defendants using and continuing to use Philips' trade secret information and stand-alone service tools to service Philips' systems and repair or refurbish Philips' systems and parts, and to thereby unfairly compete with Philips.

101. At the time of Defendants' disclosure and use of Philips' trade secret information, Defendants knew or had reason to know that the information they learned and received from Philips was acquired under circumstances giving rise to a duty to maintain the secrecy of the information or limit the use of the information.

102. Defendants continue to acquire, disclose, and use Philips' trade secret information.

103. Defendants' acquisition, disclosure, and use of Philips' trade secret information was without Philips' express or implied authority or consent.

104. Defendants' actions have been knowing, deliberate, willful, and in utter disregard of Philips' rights.

105. The Defendants' trade secret misappropriation acts constitute unfair and deceptive trade practices pursuant to Section 75-1.1.

106.     Defendants' conduct was and continues to be in or affecting commerce.

107.     Further, Defendants had ongoing employment duties to comply with the terms of their Agreements and Affirmations.

108.     Defendants willfully violated the terms of their Agreements and Affirmations by retaining Philips' confidential and/or proprietary information, including documents, software, and business information, after the termination of their employment with Philips.

109.     Defendants deceived Philips by participating in off-boarding processes in relation to their termination while concealing from Philips that they were going to work for Philips' competitor.

110.     Defendants misrepresented to Philips during their off-boarding process that they had returned and/or were not taking any Philips' property information, including documents, or tools relating to servicing Philips' systems.

111.     Defendants further willfully violated the terms of their Agreements and Affirmations by providing Philips' confidential and/or proprietary information, including documents, software, and business information, to Transtate.

112.     Defendants further willfully violated the terms of their Agreements and Affirmations by using Philips' confidential and/or proprietary information to service Philips' systems and repair or refurbish Philips' systems and parts, including using documents and service tools taken from Philips to service Philips' systems and using Transtate's exploit software developed by Transtate based on trade secret information misappropriated from Philips and using, without authorization, Philips' proprietary service materials accessible via Transtate's exploit software.

113. Philips has been damaged by all of the foregoing and is entitled to an award of treble damages pursuant to N.C. Gen. Stat. § 75-16 and attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1 because Defendants willfully engaged in deceptive and unfair acts and unfair methods of competition against Philips.

## Jury Trial Demanded

Philips requests a jury trial on all issues and claims so triable.

## Prayer for Relief

WHEREFORE, Philips respectfully requests that this Court:

A.     enter a permanent injunction and order requiring an accounting and return of all misappropriated trade secret information consistent with Philips' requests herein;

B.     enter a final order in Philips' favor and holding Defendants liable for all claims set forth herein;

C.     award monetary damages to Philips, including but not limited to compensatory damages, enhanced, and punitive damages, to the extent recoverable by law;

D.     award Philips its attorneys' fees and costs, to the extent recoverable by law; and

E.     award Philips any other damages and/or relief deemed appropriate by the Court.

|          |                                                                          |
|----------|--------------------------------------------------------------------------|
| By:      | s/ *Jeffrey P. MacHarg*                                                   |

By:          s/ *Jeffrey P. MacHarg*

Jeffrey P. MacHarg
N.C. State Bar No. 37546
FOX ROTHSCHILD LLP
101 North Tryon Street, Suite 1300
Charlotte, NC 28246
Tel:     (704) 384-2618
Fax:     (704) 384-2800
Email:  jmacharg@foxrothschild.com

Kirsten R Rydstrom
Pa. ID 76549 (*pro hac vice motion to be filed*)
Christopher R. Brennan
Pa. ID 313534 (*pro hac vice motion to be filed*)
Gregory D. Vose
Pa. ID 324912 (*pro hac vice motion to be filed*)
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Tel.:    (412) 288-3131
Fax:    (412) 288-3063
Email:  krydstrom@reedsmith.com
        cbrennan@reedsmith.com
        gvose@reedsmith.com

Gerard M. Donovan
DC Bar 997156 (*pro hac vice motion to be filed*)
REED SMITH LLP
1301 K Street, N.W., Suite 1000 – East Tower
Washington, DC 20005
Tel.:    (202) 414-9224
Fax:    (202) 414-9299
Email:  gdonovan@reedsmith.com

*Counsel for Plaintiff*

Dated: June 11, 2019